IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HOUSE CALL PHYSICIANS OF ILLINOIS, ) <br> *et al.*, ) <br> ) <br> Defendants. ) | Case No. 15 C 3684 <br><br> Jeffrey T. Gilbert <br> Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff The Hanover Insurance Company's ("Hanover") Motion for Summary Judgment [ECF No. 35]. Hanover filed this lawsuit against Housecall Physicians of Illinois, SC ("Housecall SC"), Housecall Physicians Group of Illinois, SC ("Housecall Group SC") and MD@Home Management, LLC ("MD@Home") (collectively, the "corporate Defendants") and Susan Beesely, Debra Lingelbach, Deborah Curtis, Gertrude Glaspie, Brenda Nelson, Marcie Holliman, Thelma Young, Judith Kohl and Raquel Brown (collectively, the "individual Defendants"), seeking a declaratory judgment that Hanover does not have a duty to defend or to indemnify the corporate Defendants in connection with the underlying lawsuits filed in state court by the individual Defendants. For the reasons discussed herein, Hanover's Motion for Summary Judgment [ECF No. 35] is granted.

**I. LEGAL STANDARD**

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). A

court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983). Conclusory allegations will not defeat a motion for summary judgment. *Thomas v. Christ Hosp. and Medical Center*, 328 F.3d 890, 893-94 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888-89 (1990)). Unsupported speculation also will not defeat a summary judgment motion; and an affidavit that includes general opinions and beliefs does not create a genuine issue of material fact sufficient to defeat summary judgment. *Cleveland v. Porco Co.*, 38 F.3d 289, 295 (7th Cir. 1994). Importantly, when considering whether summary judgment is appropriate, the court must rely upon the statements of facts and responses thereto submitted by the parties. To that end, the parties must comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of the District Court for the Northern District of Illinois.

A.   **Local Rule 56.1 Requirements**

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts with "specific references to the affidavits, parts of the record, and other supporting

2

materials relied upon to support the facts . . . ." Local Rule 56.1(a). The nonmoving party opposing the motion for summary judgment then must file a response to this statement, as well as its own statement of additional facts if necessary. *See* Local Rule 56.1(b)(3). The moving party then has an opportunity to admit or deny the nonmoving party's statement of additional facts. *See* Local Rule 56.1(a) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.").

The purpose of the Local Rule 56.1 statement of facts is to identify the relevant evidence supporting the material facts that the moving party contends are undisputed, not to make factual or legal argument. *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). A party's obligation to support its facts with evidence is mandatory, and the Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011); *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000).

**B. Defendants Did Not Comply With Local Rule 56.1**

Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(B). Local Rule 56.1(b)(3)(C) also "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts

3

that require the denial of summary judgment.'" *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005) (quoting Local Rule 56.1(b)(3)(C)).

In responding to Hanover's Motion for Summary Judgment [ECF No. 35], both the corporate Defendants and the individual Defendants failed to file any response to Hanover's Statement of Facts [ECF No. 36] pursuant to Local Rule 56.1(b)(3)(B). Nor did they file any statement of additional facts pursuant to Local Rule 56.1(b)(3)(C). The failure of a nonmoving party to abide by the requirements of Local Rule 56.1 carries significant consequences. Local Rule 56.1(b)(3) mandates that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3); *see also Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). "This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000).

As stated above and repeated here for emphasis, the Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1. *See Yancick,* 653 F.3d at 537; *Patterson,* 589 F.3d at 359; *Bordelon,* 233 F.3d at 527. Accordingly, because Defendants failed to file any Local Rule 56.1(b)(3)(B) responses, the facts set forth in Hanover's Statement of Facts are deemed admitted.

## II. STATEMENT OF FACTS

The following is a brief summary of the material undisputed facts taken from Hanover's Local Rule 56.1 Statement of Facts. *See* [ECF No. 36]. Hanover issued a commercial general liability policy to Housecall SC for the policy period May 23, 2013 to May 23, 2015. [ECF No.

36], at ¶19. MD@Home is listed as an additional named insured on the policy. [ECF No. 36], at ¶19. Charles DeHaan was employed by the corporate Defendants as a medical doctor. [ECF No. 36], at ¶20. Charles DeHaan was not employed by any of the corporate Defendants after January 14, 2013. [ECF No. 36], at ¶20.

The individuals Defendants Susan Beesely, Debra Lingelbach, Deborah Curtis, Gertrude Glaspie, Brenda Nelson, Marcie Holliman, Thelma Young, Judith Kohl and Raquel Brown filed lawsuits in state court alleging that Charles DeHaan sexually assaulted them when he visited their homes to treat them. [ECF No. 36], at ¶¶21-32. Specifically, the individual Defendants asserted assault and battery claims against Charles DeHaan as agent and employee of the corporate Defendants and negligent hiring and retention of DeHaan against the corporate Defendants. [ECF No. 36], at ¶32.

### III. DISCUSSION

As a threshold matter, the parties do not dispute that Illinois law applies to determine Hanover's duties and obligations under the insurance policy at issue in the underlying lawsuits. Illinois law treats the interpretation of an insurance policy as a question of law that can be resolved on summary judgment. *See Illinois Cent. R.R. Co. v. Accident & Cas. Co. of Winterhur*, 317 Ill. App. 3d 737, 744, 739 N.E.2d 1049 (1st Dist. 2000); *Connecticut Indem. Co. v. DER Travel Serv. Inc.*, 328 F.3d 347, 349 (7th Cir. 2003). A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intention of the parties as expressed in their agreement. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (Ill. 1993). When the language of an insurance policy is clear and unambiguous, it must be afforded its plain and ordinary meaning. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108 (1992).

Under Illinois law, an insurer's duty to defend an insured turns primarily on the allegations of the underlying complaint. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (Ill. 1991). If the underlying complaint alleges facts even potentially within policy coverage, the insurer is obliged to defend its insured. *Id.* When the underlying complaint alleges several theories of recovery, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *Id.* In addition, if an insurer has a duty to defend the insured in one count of a lawsuit, it has a duty to defend that insured in all counts of that lawsuit. *Pekin Ins. Co. v. Wilson,* 237 Ill. 2d 446, 453, 930 N.E.2d 1011, 1015 n. 2 (Ill. 2010); *see also Md. Cas. Co. v. Peppers,* 64 Ill.2d 187, 194, 355 N.E.2d 24, 28 (Ill. 1976). In other words, if the insurer wishes to avoid the duty to defend, the insurer must show that the underlying lawsuit has no potential to lead to liability covered under the policy. *See Pekin Ins. Co.,* 237 Ill.2d at 455, 930 N.E.2d at 1017.

The underlying complaints and the insurance policy must be liberally construed in favor of the insured. When a policy provision is clear and unambiguous, its language must be taken in its "plain, ordinary and popular sense." *Hartford Accident & Indemnity Co. v. Case Foundation Co.,* 10 Ill.App.3d 115, 121, 294 N.E.2d 7, 12 (Ill. 1973). A provision is ambiguous if it is subject to more than one reasonable interpretation. *Marathon Plastics, Inc. v. International Insurance Co.,* 161 Ill.App.3d 452, 464, 514 N.E.2d 479 (Ill. 1987). All doubts and ambiguities must be resolved in favor of the insured. *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.,* 150 Ill.App.3d 479, 501 N.E.2d 817 (Ill. 1986); *Trovillion v. United States Fidelity & Guaranty Co.,* 130 Ill.App.3d 694, 474 N.E.2d 953 (Ill. 1985). When an insurer defends its insured under a reservation of rights, it may file a declaratory judgment action seeking a determination that it is not required to defend or

indemnify in connection with the underlying action and it may rely on extrinsic evidence to prove facts that would take the underlying lawsuit completely outside of the potential coverage of the insurance policy. *See Atlantic Cas. Ins. Co. v. Sealtite Roofing & Construction Co.*, 73 F.Supp.3d 953, 957-958 (N.D. Ill. 2014) (citing *Pekin Ins. Co.*, 237 Ill. 2d at 460-62, 930 N.E.2d at 1019-20).

A.  **The Hanover Policy Provides No Coverage for the Acts Alleged in the Underlying State Court Actions Because They Predate the Hanover Policy**

Hanover issued to Housecall SC a commercial general liability policy, otherwise known as an "occurrence" policy. The policy specifically provides:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> \* \* \*
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>
>> (2) <u>The "bodily injury" or "property damage" occurs during the policy period.</u>
>
> \* \* \*

[ECF No. 1-2], at 48 (emphasis added). The Seventh Circuit Court of Appeals has held that "occurrence" policies "insure against a negligent or other liability-causing <u>act or omission that occurs during the policy period</u> regardless of when a legal claim arising out of that act or

7

omission is made against the insured." *National Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993) (emphasis added). Occurrence policies are designed to insure for incidents that occur during the policy period and not for incidents that already have happened. *Id.*

It is undisputed that DeHaan was not employed by any of the corporate Defendants after January 14, 2013. [ECF No. 36], at ¶20. It also is undisputed that the policy period at issue here is May 23, 2013 to May 23, 2015. [ECF No. 36], at ¶19. Because DeHaan had stopped working for the corporate Defendants prior to the inception of the policy, Hanover argues that its policy does not apply in this case, and Hanover does not have a duty to defend or to indemnify the corporate Defendants. The Court agrees. The Hanover policy is an occurrence based policy that covers acts that occur between May 23, 2013 and May 23, 2015. Because the alleged assaults committed by DeHaan occurred prior to the inception of the policy, the Hanover policy is not triggered in this case.

Defendants, however, argue that even if Charles DeHaan's acts occurred prior to the inception of the Hanover policy, "the unambiguous language of the policy provides for coverage of "bodily injury" that occurs during the policy period." [ECF No. 37], at 9. Defendants argue that the triggering event in this case is the bodily injury that resulted from the alleged sexual assaults and not the acts themselves. *Id.* In other words, Defendants argue that because each of the individual Defendants (who are the underlying state court plaintiffs) alleges serious bodily injury, and treatment in some cases, during the Hanover policy period, the Hanover policy therefore provides coverage. The Court disagrees.

In *Empire Indem. Ins. Co. v. Chicago Province of Soc. of Jesus*, 2013 Ill. App. 112346, 990 N.E.2d 845 (1st Dist. 2013), the Illinois Appellate Court considered an "occurrence" based

policy, which limited coverage to bodily injury and property damage occurring during the policy, and held that the policy provided no coverage for alleged sexual assaults that happened prior to the policy's inception. 990 N.E.2d at 858. The Appellate Court specifically emphasized that to require coverage for pre-policy acts "would improperly transform this occurrence-based policy into a claims-based policy." *Id.*

The insureds in *Empire Indem. Ins. Co. v. Chicago Province of Soc. of Jesus* alleged, just as Defendants do in this case, that the policy provided coverage for any injury occurring during the policy period "regardless of when the harm giving rise to the injury occurs." *Id.* at 857. The Illinois Appellate Court rejected that argument and held that the "precise act giving rise to the coverage is the infliction of some type of harmful or inappropriate sexual contact, not the subsequent emotional or psychological ill effects from the contact." *Id.* at 858. In this case, the alleged liability-causing acts which potentially could trigger insurance coverage happened months before the Hanover policy incepted, and the Hanover policy does not cover acts that occurred prior to the inception of the policy it issued to the corporate Defendants. *See* [ECF No. 1-2], at 48 ("This insurance applies to "bodily injury" and "property damage" only if . . . [t]he "bodily injury" or "property damage" occurs during the policy period.").

Defendants here do not challenge the Illinois Appellate Court's analysis but instead focus on its reference to a separate endorsement in the policy at issue in *Empire*. That argument misses the point because the question here is not whether DeHaan's alleged conduct potentially is covered by the Hanover policy, but <u>whether such conduct (DeHaan's alleged inappropriate contact and assault) occurred during the policy period</u>. It did not. It is undisputed that Charles DeHaan no longer was employed by any of the corporate Defendants when the Hanover policy

9

incepted. He had stopped working for them nearly four months before the policy incepted. Therefore, the Hanover policy is not triggered.

Defendants rely on two cases in support of their argument — *Zurich Inc. Co. v. Raymark Indus. Inc.*, 118 Ill. 2d 23, 514 N.E.2d 150 (1987), and *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561 (7th Cir. 1998). Neither of these cases persuades this Court that Hanover's policy is triggered in this case or that Hanover has a duty to defend or to indemnify the corporate Defendants here.

In *Zurich*, the court addressed potential coverage for claims relating to exposure to asbestos. None of the parties in *Zurich*, however, disputed that initial exposure to asbestos constituted "bodily injury" and triggered the policies in effect at the time of that exposure. 118 Ill.2d at 38-40. Instead, the court focused on extensive medical evidence — noting that once inhaled, the asbestos fibers remained in the lungs and continued to cause injury — and held that for asbestos-related claims: "'[b]odily injury' takes place at or shortly after the claimant was exposed to asbestos and continues throughout a claimant's exposure to asbestos." *Id.* at 46-47. The court held that the claimants' initial exposure to asbestos caused injury and its continued presence inside of the claimants continued to cause injury. *Id.* However, such an analysis is not applicable to whether the Hanover policy in this case potentially covers the corporate Defendants' alleged liability for DeHaan's alleged sexual assaults that occurred prior to the inception of the Hanover policy.

Defendants also failed to note that another court in this district specifically considered an asbestos-related trigger when it rejected attempts to impose a continuing-tort theory. *See Northfield Ins. Co. v. City of Waukegan*, 761 F. Supp.2d 766, 773-74 (N.D. Ill. 2010) (citing *Coregis Ins. Co. v. City of Harrisburg*, 2006 WL 860710, at *9 (M.D. Pa. March 30, 2006)

(rejecting multiple trigger theory in civil rights context and explaining that the Third Circuit has noted that the multiple trigger theory has been adopted in very limited circumstances, such as asbestosis)). Here, the corporate Defendants' potential liability would be for DeHaan's acts while he was employed by the corporate Defendants. Because all of the alleged assaults occurred before Hanover's policy incepted, the Hanover policy is not triggered.

Although the corporate Defendants rely on the court's analysis in *Roman Catholic Diocese of Springfield*, they fail to note that the court in *TIG Indem. Co. v. McFatridge*, 2007 WL 1063018 (C.D. Ill. Mar. 30, 2007), specifically analyzed and distinguished *Roman Catholic Diocese of Springfield* — noting that all of the alleged acts at issue in *Roman Catholic Diocese of Springfield* took place during the policy period. *See TIG Indem. Co.*, 2007 WL 1063018, at *3. Indeed, in *Roman Catholic Diocese of Springfield*, the policy at issue was in effect from December 1977 to December 1981, and during that period, the insured's priest allegedly sexually assaulted a number of children. *Roman Catholic Diocese of Springfield*, 139 F.3d at 564. It wasn't until 1993 that the parents of those children learned of the priest's actions and sued the Diocese of Springfield. *Id.* at 562. In that case, the court held that the terms of the policy "quite clearly limit coverage to personal injuries that occur during the policy period" and that <u>there potentially was coverage only for those injuries that stemmed from the alleged conduct during the policy period</u>. *Id.* at 566-67 (emphasis added).

The court's analysis in *Roman Catholic Diocese of Springfield* is not persuasive in this case because none of DeHaan's alleged sexual assaults of the individual Defendants took place during the time period when the Hanover policy was in effect nor was DeHaan even employed by the corporate Defendants during the policy period. It is not disputed that the alleged assaults

11

occurred prior to the inception of the Hanover policy and that DeHaan stopped working for the corporate Defendants prior to the inception of the policy.

Some of the individual Defendants, however, allege that they received treatment from DeHaan during the policy period. As discussed above, the individual Defendants did not comply with Local Rule 56.1 and did not file a separate statement of additional facts as required by Local Rule 56.1(b)(3)(C). Although the individual Defendants discussed some facts in their memorandum in opposition to Hanover's motion for summary judgment and attached two documents as evidence of treatment received to support the facts alleged, those additional facts and the attached documents are not properly before this Court because Defendants failed to comply with Local Rule 56.1(b)(3)(C).

The discussion of facts in a responsive memorandum is insufficient to put those alleged facts before the court. *See Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995); *Malec v. Sanford*, 191 F.R.D. 581, 594 (N.D. Ill. 2000). Facts are to be set forth in properly submitted Local Rule 56.1 statements, and it is not the role of the court to parse the parties' exhibits to construct the facts. As the Seventh Circuit has said, judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 754 F. Supp. 2d 984, 985 (N.D. Ill. 2010) (citing *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)). It simply is not the court's job to sift through the record to determine whether there is sufficient evidence to support a party's claim. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job . . . to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006); *see also Hamm v. Nestle USA, Inc.*, 2013 WL 4401328, at * 2 (N.D. Ill. Aug. 15, 2013).

Even if this Court were to consider those facts, nothing in the documents submitted by the individual Defendants indicates that it was DeHaan who provided treatment to them during the policy period. Moreover, as discussed above, it is undisputed that that DeHaan's employment with the corporate Defendants had terminated prior to the inception of the Hanover policy. [ECF No. 36], at ¶¶19-20. Because DeHaan stopped working for the corporate Defendants prior to the inception of the policy, the Hanover policy at issue here simply does not apply in this case, and Hanover does not have a duty to defend or to indemnify the corporate Defendants.

Finally, contrary to Defendants' arguments, the Court is not making any determination as any contested issues in the underlying state actions. Nor is this Court taking any position regarding whether or to what extent the corporate Defendants may be liable for DeHaan's actions when he was employed by them. Instead, the Court simply is ruling on a fundamental issue of insurance law. In that vein, the Court has concluded that Hanover does not have a duty to defend or indemnify the corporate Defendants in the underlying actions based on the undisputed facts that the alleged assaults occurred prior to the inception of the Hanover policy and DeHaan stopped working for the corporate Defendants months before the Hanover policy incepted.

**B.     Defendants' Additional Arguments Have No Merit**

Defendants also argue that this Court cannot grant Hanover's motion because it relies on evidence that is outside of the two documents that can be considered — the complaint and the insurance policy at issue. The Court disagrees.

When an insurer defends under a reservation of rights, it may file a declaratory judgment action seeking a determination that it is not required to defend or indemnify in connection with the underlying action, and it may rely on extrinsic evidence to prove facts that would take the underlying lawsuit completely outside of the potential coverage of the insurance policy. *See*

*Atlantic Cas. Ins. Co. v. Sealtite Roofing & Construction Co.*, 73 F.Supp.3d 953 (N.D. Ill. 2014) (citing *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 460-62, 930 N.E.2d 1011 (2010)). Moreover, Hanover is not limited to the allegations contained in the complaint, as the Court may look beyond the complaint regarding ancillary matters. *See Bituminous Cas. Corp. v. Fulkerson*, 212 Ill.App.3d 556, 562, 571 N.E.2d 256 (5th Dist. 1991) (citing *State Farm Fire & Cas. Co. v. Shelton*, 176 Ill.App.3d 858, 867, 531 N.E.2d 913 (1st Dist. 1988)).

Additionally, one of the individual defendants, Lingelbach, asserts there is insurance coverage under the Hanover policy for her claim of medical malpractice because DeHaan failed to diagnose her with lung cancer, which she subsequently discovered during Hanover's policy period. The Court disagrees.

As an initial matter, Lingelbach's complaint [ECF No. 26-8] does not allege a failure to diagnose, and she has not offered any admissible evidence to support her assertion that she is even making such a claim. Nevertheless, the Hanover commercial general liability policy does not provide any coverage for such a claim because: (1) DeHaan's alleged misdiagnosis while employed by the corporate Defendants would have predated the Hanover policy for the reasons discussed above; and (2) the policy is not a medical malpractice policy and, in fact, contains an endorsement with an exclusion for services furnished by health care providers endorsement. The policy specifically provides:

EXCLUSION — SERVICES FUNRNISHED BY
HEALTHCARE PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERIAL GENERAL LIABILITY COVEREAGE PART

SCHEDULE

Description Of Operations:
HEALTHCARE OPERATION

* * *

The following exclusion is added to Paragraph 2, Exclusions of Section I– Coverage A –Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The rendering or failure to render:

   a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the furnishing of food or beverages;

   b. Any health or therapeutic service, treatment, advice or instruction; or

   c. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

3. The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

* * *

[ECF No. 1-2], at 72. Based on the plain language of the policy, Hanover does not provide any insurance coverage for claims that the corporate Defendants, through their employee DeHaan, failed to diagnose any medical condition. *See National Fire Ins. Co. of Hartford v. Killfoy*, 375 Ill.App.3d 530, 534-35, 874 N.E.2d 196 (1st Dist. 2007) (professional services exclusion applied to bar coverage for company's alleged negligent hiring of doctors who were unqualified to render medical services). For these reasons, Defendants' additional arguments also fail.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Plaintiff The Hanover Insurance Company's Motion for Summary Judgment [ECF No. 35] is granted. The Court directs the Clerk to enter judgment in favor of Plaintiff. This is a final and appealable order. Civil case terminated.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 19, 2016